# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Gurpreet Kaur,<br><br>               Petitioner,<br><br>          v.<br><br>Captain Joel Desso, Jail Administrator, Clinton County Correctional Facility, Reynaldo Castro, Acting Director of Buffalo Field Office, U.S. Immigration and Customs Enforcement, Kristi Noem, Secretary of the U.S. Department of Homeland Security, Pam Bondi, Attorney General of the United States, in their official capacities,<br><br>               Respondents. | Civil Action No.:    9:25-cv-00726-AMN |

---

**SUPPLEMENTAL BRIEF OF RESPONDENTS, REYNALDO CASTRO, ACTING DIRECTOR OF BUFFALO FIELD OFFICE, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, KRISTI NOEM, SECRETARY OF THE U.S. DEPARTMENT OF HOMELAND SECURITY, PAM BONDI, ATTORNEY GENERAL OF THE UNITED STATES, IN THEIR OFFICIAL CAPACITIES, SUBMITTED IN FURTHER OPPOSITION TO PETITIONER'S EMERGENCY MOTION FOR TEMPORARY STAY OF REMOVAL AND RESPONSE TO PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO DKT. # 13**

---

JOHN A. SARCONE III
United States Attorney


By:

    David M. Katz
    Assistant United States Attorney
    Bar Roll No. 700065

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................1

ARGUMENT ....................................................................................................................3

    I.     Petitioner's Supplemental Brief Does Not Change the Analysis...........................3

         A.    Tatabaeifar was Incorrectly Decided. ...........................................3

         B.    Petitioner's Habeas Corpus and Mandamus Claims Do Not Avoid 8 U.S.C. § 1252........................................................................7

         C.    Petitioner's Suspension Clause Claim Fails. .................................9

         D.    Petitioner's Other Constitutional Claims Fail...........................11

             1.    Petitioner's Due Process Claims Fail.............................11

             2.    Petitioner's Equal Protection Claim Fails......................16

             3.    Petitioner's Facial Constitutional Challenge Fails........................17

         E.    Petitioner's Irreparable Harm and Equities Arguments are Unavailing.....................................................................................19

    II.    Petitioner Received a Convention Against Torture Assessment. ..........................20

CONCLUSION................................................................................................................21

# TABLE OF AUTHORITIES

## Cases

*Arizona v. United States*,
    567 U.S. 387 (2012)................................................................................ 3

*Bouarfa v. Mayorkas*,
    604 U.S. 6 (2024).................................................................................... 7

*Boumediene v. Bush*,
    553 U.S. 723 (2008).............................................................................. 10

*Delgado v. Quarantillo*,
    643 F.3d 52 (2d Cir. 2011)..................................................................... 8

*Demore v. Kim*,
    538 U.S. 510 (2003)................................................................................ 2

*Department of Homeland Security v. Thuraissigiam*,
    591 U.S. 103 (2020)...................................................................... passim

*Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont*,
    565 F.3d 56 (2d Cir. 2009)..................................................................... 7

*Exxon Mobil Corp. v. Allapattah Services, Inc.*,
    545 U. S. 546 (2005)............................................................................... 7

*Garland v. Aleman Gonzalez*,
    596 U.S. 543 (2022).............................................................................. 17

*Home Depot U. S. A., Inc. v. Jackson*,
    587 U.S. 435 (2019)............................................................................... 7

*Huisha-Huisha v. Mayorkas*,
    27 F.4th 718 (D.C. Cir. 2022)............................................................... 15

*Jama v. Immigr. & Customs Enf't*,
    543 U.S. 335 (2005)................................................................................ 3

*Lamare v. Garland*,
    2023 WL 8666044,
    No. 20-71358 (9th Cir. Dec. 15, 2023) ................................................. 5

*Landon v. Plascencia*,
    459 U.S. 21 (1982)............................................................................... 13

*Lora v. Shanahan*,
  719 Fed. App'x 79 (2d Cir. 2018) .................................................................. 13

*Lora v. Shanahan*,
  804 F.3d 601 (2d Cir. 2015) ......................................................................... 13

*Mathews v. Diaz*,
  426 U.S. 67 (1976) .......................................................................................... 2

*Mendoza-Linares v. Garland*,
  51 F.4th 1146 (9th Cir. 2022) ........................................................................ 5

*Nishimura Ekiu v. United States*,
  142 U.S. 651 (1892) ...................................................................................... 11

*Nouritajer v. Jaddou*,
  18 F.4th 85 (2d Cir. 2021) .............................................................................. 8

*Owen Equipment & Erection Co. v. Kroger*,
  437 U.S. 365 (1978) ........................................................................................ 7

*Reno v. American-Arab Anti-Discrimination Committee*,
  525 U.S. 471 (1999) ................................................................................. 18, 19

*Royal Canin U. S. A., Inc. v. Wullschleger*,
  604 U.S. 22 (2025) .......................................................................................... 7

*Sale v. Haitian Centers Council, Inc.*,
  509 U.S. 155 (1993) ...................................................................................... 15

*Shanahan v. Lora*,
  583 U.S. 1165 (2018) .................................................................................... 13

*Tabatabaeifar v. Scott*,
  No. CV-25-01238-PHX-GMS (MTM),
  2025 WL 1397114 (D. Ariz. May 14, 2025) ..................................... 1, 3, 4, 5

*Trump v. Hawaii*,
  585 U.S. 667 (2018) ...................................................................................... 19

*U.S. ex rel. Knauff v. Shaughnessy*,
  338 U.S. 537 (1950) ...................................................................................... 11

*United States v. Arizmendi-Depaz*,
  No. 18-CR-4949,
  2019 WL 3945459 (S.D. Cal. Aug. 21, 2019) ................................................. 5

*United States v. Avalos-Perez*,
    No. 3:16-CR-02827,
    2017 WL 1400018 (S.D. Cal. Apr. 19, 2017)..................................................5

*United States v. Salerno*,
    481 U.S. 739 (1987)..................................................................................18

*Velasco Lopez v. Decker*,
    978 F.3d 842 (2d Cir. 2020)......................................................................13

*Washington State Grange v. Washington State Republican Party*,
    552 U.S. 442 (2008)..................................................................................18

*Wong Wing v. United States*,
    163 U.S. 228 (1896)..................................................................................12

*Zadvydas v. Davis*,
    533 U.S. 678 (2001)..................................................................................12

**Statutes**

28 U.S.C. § 1361.............................................................................................8

8 U.S.C. § 1182(f).....................................................................................14, 20

8 U.S.C. § 1185(a).........................................................................................20

8 U.S.C. § 1185(a)(1)......................................................................................14

8 U.S.C. § 1225(b)....................................................................................passim

8 U.S.C. § 1225(b)(1)....................................................................................4, 7

8 U.S.C. § 1225(b)(1)(A)(ii)...........................................................................14

8 U.S.C. § 1225(b)(1)(A)(iii)(II).....................................................................16

8 U.S.C. § 1252..................................................................................1, 2, 8, 17

8 U.S.C. § 1252(a)(2)(A)..............................................................................4, 5

8 U.S.C. § 1252(a)(2)(A)(i)..............................................................................4

8 U.S.C. § 1252(a)(2)(A)(ii).............................................................................4

8 U.S.C. § 1252(a)(2)(A)(iii)............................................................................4

8 U.S.C. § 1252(a)(2)(A)(iv) ................................................................................................. 4

8 U.S.C. § 1252(e)(2) ........................................................................................................... 9

8 U.S.C. § 1252(e)(3) ....................................................................................................... 2, 9

8 U.S.C. § 1252(e)(3)(A) ...................................................................................................... 9

8 U.S.C. § 1252(e)(3)(B) ........................................................................................... 9, 16, 17

8 U.S.C. § 1252(a)(2)(A) ...................................................................................................... 8

## PRELIMINARY STATEMENT

Respondents, Reynaldo Castro, Kristi Noem, and Pam Bondi ("Respondents"), submit this brief in further opposition to the Petition and the pending emergency motion as authorized by this Court's June 16, 2025, Order. *See* Dkt. # 13. The Court directed Respondents to provide both a response to Petitioner's supplemental brief and a statement as to the nature of the interview afforded to Petitioner. *Id.*

Petitioner does not dispute she is an Indian national who unlawfully entered the United States on May 14, 2025 without being inspected by an Immigration Officer at a designated port of entry in violation of 8 U.S.C. § 1325. She was apprehended on May 15, 2025 within 100 air miles of the United States' land border with Canada. Petitioner also does not dispute she did not have the necessary legal documents to enter the United States. Petitioner here was subject to expedited removal under 8 U.S.C. § 1225(b)(1) pursuant to a 2004 notice by the Secretary of Homeland Security. As Respondents previously explained, Petitioner seeks broad relief from expedited removal processes that she cannot obtain here pursuant to 8 U.S.C. § 1252 and the caselaw.

First, Petitioner's supplemental arguments do not change the analysis. Petitioner relies on *Tabatabaeifar v. Scott*, No. CV-25-01238-PHX-GMS (MTM), 2025 WL 1397114 (D. Ariz. May 14, 2025), throughout her supplemental brief. But the *Tabatabaeifar* court incorrectly concluded that the jurisdictional bars to review of expedited removal orders do not apply to those who are processed for expedited removal pursuant to the authority in Proclamation 10888, *Guaranteeing the States Protection Against Invasion*. *See* 90 Fed. Reg. 833 (Jan. 29, 2025). The decision—and more specifically the court's holdings in regard to 8 U.S.C. § 1252 being inapplicable—in *Tabatabaeifar* flowed from that court's finding that the petitioner there was not subject to 8 U.S.C. § 1225(b)(1). Yet the petitioner in *Tabatabeaifar*, like Petitioner here, was subject to expedited

removal processes. Although the *Tabatabaeifar* court disagreed with the use of the Proclamation's authority to restrict access to certain asylum procedures in the expedited removal process to effectuate the Proclamation's suspension on entry, aliens like the petitioner still fall within the parameters of expedited removal and their claims are still subject to § 1252's limitations on judicial review.

Further, Petitioner's claims do not fall into any of the limited carve-outs for review of expedited removal orders or expedited removal procedures under 8 U.S.C. § 1252, prominently including but not limited to 8 U.S.C. § 1252(e)(3), which bars constitutional challenges unless the claim is "filed no later than 60 days after the date the challenged section, regulation, directive, guideline, or procedure described in clause (i) or (ii) of subparagraph (A) is first implemented."

Despite Petitioner's claims, it is not Respondents that have precluded Petitioner from seeking judicial review here.  To the contrary, that result was Congress's design.  And, in this regard, it should be noted, "[i]n the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 521 (2003) (quoting *Mathews v. Diaz*, 426 U.S. 67, 79–80 (1976)); *see also id.* ("And, since *Mathews*, this Court has firmly and repeatedly endorsed the proposition that Congress may make rules as to aliens that would be unacceptable if applied to citizens.").  Moreover, Petitioner's constitutional claims fail on the merits.

Second, Petitioner received a Convention Against Torture assessment.  By virtue of 8 U.S.C. § 1225(b), as restricted by Proclamation 10888, Petitioner did not receive a credible fear interview.  A putative class action and programmatic challenge to Proclamation 10888 is pending in the District for the District of Columbia and has been fully briefed and argued.  *See Refugee & Immig. Ctr. for Educ. & Leg. Servs. v. Noem*, No. 1:25-cv-00306 (D.D.C. filed Feb. 3, 2025).

- 2 -

**ARGUMENT**

"The Government of the United States has broad, undoubted power over the subject of immigration and the status of aliens." *Arizona v. United States*, 567 U.S. 387, 394 (2012). This power derives *both* from "the National Government's constitutional power to establish an uniform Rule of Naturalization *and* its inherent power as sovereign to control and conduct relations with foreign nations." *Id.* at 394–95 (citations omitted). Zooming in, "[a] decision on removability requires a determination whether it is appropriate to allow a foreign national to continue living in the United States," which "touch[es] on foreign relations." *Id.* at 409; *Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 348 (2005) ("Removal decisions, including the selection of a removed alien's destination, "may implicate our relations with foreign powers" and require consideration of "changing political and economic circumstances." (citations omitted)).

Twenty years ago, the Supreme Court noted interference with congressionally provided executive discretion in the immigration context, "would run counter to our customary policy of deference to the President in matters of foreign affairs." *Jama*, 543 U.S. at 348.

I.    **Petitioner's Supplemental Brief Does Not Change the Analysis.**

        *A.*    Tatabaeifar *was Incorrectly Decided.*

For the first time in her supplemental brief, Petitioner now cites—relies heavily on—*Tabatabaeifar v. Scott*, No. CV-25-01238-PHX-GMS (MTM), 2025 WL 1397114 (D. Ariz. May 14, 2025).[1] But that decision incorrectly dismissed the significance of the expedited removal procedures under 8 U.S.C. § 1225(b). In *Tabatabaeifar*, the court concluded that, because the petitioner had not received a credible fear interview as part of the expedited removal process and

---

[1] The Government disclosed this decision in its opposition brief.

based on certain statements of counsel at argument, the petitioner was subject to "a new procedure that the government has fashioned, not under Section 1225(b), but under Presidential Proclamation No. 10888." *Tabatabaeifar*, 2025 WL 1397114, at *2. The government respectfully disagrees with this conclusion. There, as here, documentary evidence establishes that the petitioner underwent expedited removal proceedings under § 1225(b), albeit as modified to comport with Proclamation No. 10888. Although the *Tabatabaeifar* court disagreed with the manner in which those expedited removal procedures were implemented, that does not render the case subject to judicial review. Accordingly, the court should decline to rely on the reasoning *Tabatabaeifar*.

Indeed, the court in *Tabatabaeifar* began by reviewing 8 U.S.C. § 1252(a)(2)(A), which provides, "no court shall have jurisdiction to review" four issues arising out of expedited removal proceedings. *Id.* at *2. First, § 1252(a)(2)(A)(i) precludes the Court from reviewing "any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to [8 U.S.C. § 1225(b)(1)]." Second, § 1252(a)(2)(A)(ii) precludes the Court from reviewing "a decision by the Attorney General to invoke the provisions of [8 U.S.C. § 1225(b)(1)]." Third, § 1252(a)(2)(A)(iii) precludes the Court from reviewing "the application of such section to individual aliens, including the determination made under [8 U.S.C. § 1225(b)(1)(B)]." Fourth, § 1252(a)(2)(A)(iv) precludes the Court from reviewing "procedures and policies adopted by the Attorney General to implement the provisions of [8 U.S.C. § 1225(b)(1)]."

The court found, "Respondents do not purport to follow [8 U.S.C. § 1225(b)] . . . , nor do they purport to remove Petitioner pursuant to [8 U.S.C. § 1225(b)]." *Tabatabaeifar*, 2025 WL 1397114, at *2.  Based on this finding, the court reasoned, "[s]ince Petitioner was not subjected to any expedited removal proceedings pursuant to [8 U.S.C. § 1225(b)], [8 U.S.C. § 1252(a)(2)(A)] does not strip the court of jurisdiction over Petitioner's claims.  *Id.*  But the government *did* order the petitioner removed under § 1225(b), albeit with modified procedures under the authority of Proclamation 10888.

The court then provided two statements as to the import 8 U.S.C. § 1252(a)(2)(A) would have had if it applied.  First, the court explained, "[t]he Ninth Circuit has held, pursuant to 8 U.S.C. § 1252(a)(2)(A), that 'Congress has clearly and unambiguously precluded the courts from asserting jurisdiction over the merits of individual expedited removal orders, even with regard to constitutional challenges to such orders." *Tabatabaeifar*, 2025 WL 1397114, at *2, n. 4 (citing *Mendoza-Linares v. Garland*, 51 F.4th 1146, 1149 (9th Cir. 2022); *Lamare v. Garland*, 2023 WL 8666044, No. 20-71358, at *1 (9th Cir. Dec. 15, 2023)).  Indeed, the court further quoted two cases for the proposition that Congress precluded "a meaningful opportunity for judicial review" as to cases involving expedited removal pursuant to 8 U.S.C. § 1225(b)(1).  *Id.* (quoting *United States v. Avalos-Perez*, No. 3:16-CR-02827, 2017 WL 1400018, at *3 (S.D. Cal. Apr. 19, 2017); *United States v. Arizmendi-Depaz*, No. 18-CR-4949, 2019 WL 3945459, at *2 (S.D. Cal. Aug. 21, 2019)).

Here, Petitioner is being removed pursuant to 8 U.S.C. § 1225(b).[2]  Further, in their opposition papers, Respondents provided documentary evidence pre-dating this litigation confirming this fact.  Indeed, the Notice and Order of Expedited Removal, dated May 15, 2025, explicitly relies on 8 U.S.C. § 1225(b)(1).  That document specifically states, "Pursuant to 235(b)(1) of the Immigration and Nationality Act (Act), 8 U.S.C. 1225(b)(1), the Department of Homeland Security has determined that you are inadmissible to the United States under section(s) . . . 7(A)(i)(I) . . . and therefore are subject to removal."  Dkt. # 12-2 at 2.  For the Court's convenience, a snippet of the document is provided here:

**DETERMINATION OF INADMISSIBILITY** Event No: CNB2505000007

File No: ▮▮▮▮▮▮▮▮

Date: May 15, 2025

In the Matter of: GURPREET  KAUR

Pursuant to section 235(b)(1) of the Immigration and Nationality Act (Act), (8 U.S.C. 1225(b)(1)), the Department of Homeland Security has determined that you are inadmissible to the United States under section(s) 212(a) ☐ (6)(C)(i); ☐ (6)(C)(ii); ☒ (7)(A)(i)(I); ☐ (7)(A)(i)(II); ☐ (7)(B)(i)(I); and/or ☐ (7)(B)(i)(II) of the Act, as amended, and therefore are subject to removal, in that:

An "Order of Removal Under Section 235(b)(1) of the Act" followed the Notice and Order of Expedited Removal.  Dkt. # 12-2 at 2.  As with the Notice and Order of Expedited Removal, the Order of Removal specifically invokes, "the authority contained in section 235(b)(1) of the Act," as the basis for Petitioner being "ordered removed from the United States."  *Id.* For the Court's convenience, a snippet of the document is provided here:

---

[2] Respondents argued the difference between the proceedings constituted a means of distinguishing the cases in their opposition brief.  To the extent the *Tabatabaeifar* court continues to maintain the distinction, it should hold here, too.  However, to the extent the Government's position is vindicated there, Respondents take the position that *Tabatabaeifar* was improperly decided in the first instance and, upon reconsideration the Court should hold in the Government's favor.

**ORDER OF REMOVAL**
**UNDER SECTION 235(b)(1) OF THE ACT**

Based upon the determination set forth above and evidence presented during inspection or examination pursuant to section 235 of the Act, and by the authority contained in section 235(b)(1) of the Act, you are found to be inadmissible as charged and ordered removed from the United States.

Petitioner's supplemental memorandum of law repeatedly argues Petitioner was not subject to expedited removal proceedings but rather underwent some other form of proceeding. But saying it does not make it so. Petitioner offers no *evidence*—admissible or otherwise—to rebut this contemporary documentary evidence that Petitioner is being removed under 8 U.S.C. § 1225(b)(1). Instead, Petitioner offered nothing more than conclusory statements in an unsworn memorandum of law claiming § 1225(b)(1) did not apply here.

       B.     *Petitioner's Habeas Corpus and Mandamus Claims Do Not Avoid*
             *8 U.S.C. § 1252.*

All "federal courts are courts of limited jurisdiction" by virtue of both the Constitution and Congressional enactment. *Home Depot U.S.A., Inc. v. Jackson*, 587 U.S. 435, 437 (2019) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)); *Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont*, 565 F.3d 56, 62 (2d Cir. 2009) ("It is a fundamental precept that federal courts are courts of limited jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution or Congress." *Id.* (quoting *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978))). Federal courts are "[l]imited first by the Constitution, to only the kinds of 'Cases' and 'Controversies' listed in Article III." *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 26 (2025). Then, "lower federal-court jurisdiction 'is further limited to those subjects encompassed within a statutory grant of jurisdiction.'" *Home Depot*, 587 U.S. at 437 (quoting *Kokkonen*, 511 U.S. at 437); *Royal Canin*, 604 U.S. 22 ("And for all lower federal courts, limited as well by statute").

"Congress determines, through its grants of jurisdiction, which suits [district courts] can resolve." *Royal Canin*, 604 U.S. 22. And, by the same token, "the district courts may not exercise jurisdiction absent a statutory basis." *Home Depot*, 587 U.S. at 437 (quoting *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U. S. 546, 552 (2005)). Notably, jurisdiction stripping statutes, like § 1252, can overcome any generalized notion that administrative action is subject to judicial review. *Bouarfa v. Mayorkas*, 604 U.S. 6, 14 (2024).

This Court is not bound by Petitioner's statement regarding the nature of her challenge. To the contrary, "whether the district court has jurisdiction will turn on the substance of the relief that a Petitioner is seeking." *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011); *Nouritajer v. Jaddou*, 18 F.4th 85, 88 (2d Cir. 2021) (looking beyond a statement "characterizing . . . claims" and looking instead to the "gravamen" of the claims in determining whether jurisdiction existed). To that end, the Second Circuit has refused to allow a Petitioner to "evade the restrictions of" 8 U.S.C. § 1252 provisions "by styling [a] challenge as a mandamus action in order to claim jurisdiction under" the mandamus statute, codified at 28 U.S.C. § 1361." *Delgado*, 643 F.3d at 56. So, too, while Petitioner states she is not challenging the expedited removal framework itself, the Court can look beyond Petitioner's characterization and instead consider the nature of the underlying allegations.

Petitioner's newfound mandamus claim does not change the applicability of several subsections of 8 U.S.C. § 1252, which likewise apply to mandamus claims. 8 U.S.C. §§ 1252(a)(2)(A) ("Notwithstanding any other provision of law (statutory or nonstatutory) including . . . [28 U.S.C. § 1361] . . . , no court shall have jurisdiction to review . . . ."), (a)(2)(B) (same), (a)(5) (same), (e)(1) ("Without regard to the nature of the action or claim . . . no court may . . . ."), (g) ("Except as provided in this section and notwithstanding any other provision of law

- 8 -

(statutory or nonstatutory) including . . . [28 U.S.C. § 1361] . . . , no court shall have jurisdiction to hear any cause or claim . . . .").

"Under 8 U.S.C. § 1252(a)(2)(B), 'no court shall have jurisdiction to review . . . any . . . decision or action of the . . . Secretary of Homeland Security . . . which is specified . . . to be in the discretion of . . . the Secretary of Homeland Security," *Nouritajer*, 18 F.4th at 88. The Second Circuit has held this provision "operate[s] to strip federal courts of jurisdiction to review a substantive discretionary decision" of the Secretary of Homeland Security. *Id.*

C.    *Petitioner's Suspension Clause Claim Fails.*

As a preliminary matter, Petitioner wrongly states 8 U.S.C. § 1252(e)(2) allows for constitutional challenges in habeas corpus petitions arising out of expedited removal proceedings. In fact, 8 U.S.C. § 1252(e)(2) unambiguously *limits* the issues in such a petition to three issues: (1) "whether the petitioner is an alien"; (2) "whether the petitioner was ordered removed under such section"; and (3) "whether the petitioner can prove by a preponderance of the evidence that the petitioner is an alien lawfully admitted for permanent residence, has been admitted as a refugee . . . , or has been granted asylum . . . ." And, 8 U.S.C. § 1252(e)(3) specifically belies Petitioner's argument that constitutional claims have been preserved writ large. 8 U.S.C. § 1252(e)(3)(A) allows for constitutional claims regarding the validity of the system, but limits such claims to being "filed no later than 60 days after the date the challenged section, regulation, directive, guideline, or procedure described in clause (i) or (ii) of subparagraph (A) is first implemented." 8 U.S.C. § 1252(e)(3)(B).[3]

---

[3] Even if not barred, such claims must proceed in the United States District Court for the District of Columbia, and there currently is a case pending there. 8 U.S.C. § 1252(e)(3)(A). *See Refugee & Immig. Ctr. for Educ. & Leg. Servs. v. Noem*, No. 1:25-cv-00306 (D.D.C. filed Feb. 3, 2025).

Further, Petitioner does not seek traditional habeas corpus relief. Just as in *Thuraissigiam*, Petitioner here "did not [just] ask to be released." *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 117 (2020). Indeed, Petitioner seeks to "prevent[] Respondents from removing Petitioner from the United States pending resolution of this matter . . . [d]eclare that Petitioner's detention and threatened removal . . . violate" constitutional provisions," and "[e]njoin Respondents from applying the 2025 expedited removal expansion to Petitioner and others similarly situated." Dkt. # 1 at 15–16. Even the habeas corpus writ she seeks asks for more than just release. *Id.* at 16. It asks for "a hearing before an immigration judge with full procedural protections, including the right to counsel, the right to present evidence, and the right to interpreter services" as well as "a full and fair opportunity to pursue her asylum claim and other forms of relief from removal." *Id.*

And, even though at one point Petitioner claims to seek release as a form of relief, the Supreme Court has noted in a similar situation that, in reality, Petitioner seeks more: vacatur of the removal order. *Id.* at 119. This is so both because, as the Supreme Court has noted, "simply releasing [Petitioner] would not provide the right to stay in the country that [the] petition ultimately seeks," which here is the opportunity to present an asylum claim. *Id.* Indeed, if Petitioner was released, she "would remain subject to arrest, detention, and removal" because she "is inadmissible because [s]he lacks an entry document." *Id.*[4] Because Petitioner here seeks "the opportunity to remain lawfully in the United States[,] . . . the relief requested falls outside the scope of the writ as it was understood when the Constitution was adopted," and therefore cannot be granted. *Id.*

---

[4] Moreover, just as the Court noted there, to the extent Petitioner truly seeks mere release from custody, "the Government is happy to release [her]—provided the release occurs in the cabin of a plane bound for" India. *Id.*

Petitioner's invocation of *Boumediene v. Bush*, 553 U.S. 723 (2008), fails because, among other reasons, the court in *Thuraissigiam* found *Boumediene* inapposite. *Id.* at 136–37.

### D.    Petitioner's Other Constitutional Claims Fail.

Petitioner creates a false dichotomy between what Petitioner characterizes as constitutional claims and statutory claims. Indeed, Petitioner's arguments conflate physical entry with legal admission. Petitioner argues due process rights apply to Petitioner because Petitioner achieved physical entry into the United States (albeit for a period of hours at most). But Petitioner did not achieve legal admission to the United States, and the court in *Thuraissigiam* drew "the line for due process at legal admission rather than physical entry." *Thuraissigiam*, 591 U.S. at 192 (Sotomayor, J., dissenting). While Petitioner may disagree with the line *Thuraissigiam* drew, Petitioner's disagreement does not override Supreme Court precedent. Under *Thuraissigiam*, Petitioner has no due process rights. Petitioner, as an applicant for admission, is entitled only to what "Congress has provided by statute." *Thuraissigiam*, 591 U.S. at 140.

### 1.    Petitioner's Due Process Claims Fail.

In *Thuraissigiam*, the court explained, "Congress is entitled to set the conditions for an alien's lawful entry into this country and that, as a result, an alien at the threshold of initial entry cannot claim any greater rights under the Due Process Clause." *Id.* at 107. The court therefore held an alien like Petitioner, who was apprehended shortly after illegally crossing the border, "has no entitlement to procedural rights other than those afforded by statute." *Id.*; *see also id.* at 140 ("For these reasons, an alien in respondent's position has only those rights regarding admission that Congress has provided by statute.").

In reaching its holding, the court relied on "more than a century of precedent." *Id.* at 138. As far back as 1892, the court explained that "the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law" as to aliens who have recently became present in the country via illegal means. *Id.* (quoting *Nishimura Ekiu v. United States*, 142 U.S. 651, 660 (1892)). Moreover, the court favorably cited *U.S. ex rel. Knauff v. Shaughnessy*, 338 U.S. 537 (1950), for the proposition that "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." *Id.* at 544.

Petitioner's limited period of unlawful presence in the United States cannot change the result. As the court explained in *Thuraissigiam*, it is a "sovereign prerogative" to admit or exclude aliens, which is entrusted to "the political department of government," and so, too, "is the power to set the procedures to be followed in determining whether an alien should be admitted." *Id.* at 139 (citations omitted). As relevant here, though, "[t]his rule would be meaningless if it became inoperative as soon as an arriving alien set foot on U. S. soil." *Id.* This principle rings especially true where, as here, Petitioner is an alien because "an alien who tries to enter the country illegally is treated as an 'applicant for admission,' and an alien who is detained shortly after unlawful entry cannot be said to have 'effected an entry.'" *Id.* at 140 (quoting 8 U.S.C. § 1225(a)(1)).

The limited cases Petitioner cite predate—and do not change the result compelled by—*Thuraissigiam*. None of the cases set any sort of constitutional floor or minimum, as Petitioner suggests. And, even more fundamentally, none applied any constitutional protections to aliens who were detained after shortly entering unlawfully in the context of a removal proceeding. In *Wong Wing v. United States*, 163 U.S. 228 (1896), the court stated, "[n]o limits can be put by the courts upon the power of congress to protect, by summary methods, the country from the advent of aliens . . . , or to expel such if they have already found their way into our land, and unlawfully

- 12 -

remain therein." *Id.* at 237.  And *Wong Wing* did not deal with rights *during* the removal process, but rather rights that might apply to imposing a punishment (the "infamous punishment" of "hard labor") for unlawful entry in addition to the normal end of the administrative process: removal. *Id.*[5]  Likewise, *Zadvydas v. Davis*, 533 U.S. 678 (2001), fails because there, unlike here and in *Thuraissigiam*, the Petitioner had "effected entry" into the United States.  *Id.* at 693.  Indeed, *Thuraissigiam* cited *Zadvyadas* for this very distinction.  *Thuraissigiam*, 591 U.S. at 140.

Petitioner also provides a quotation from *Landon v. Plascencia*, 459 U.S. 21 (1982), that does not exist.  However, Petitioner's citation to *Plascencia* fails for the same reason as Petitioner's citation to *Zadvyadas*: the case did not pertain to an alien who had not "gain[ed] admission to our country and beg[an] to develop the ties that go with permanent residence," which the court there noted would be a pivot point where the alien's "constitutional status changes."  *Id.* at 32.  And, even in that factually distinguishable scenario, the court noted, "we have only rarely held that the procedures provided by the executive were inadequate."  *Id.* at 33.

Further afield are Petitioner's citations to Second Circuit cases.  *Velasco Lopez v. Decker*, 978 F.3d 842 (2d Cir. 2020), involved an alien who entered in 1995 and lived continuously in the United States continuously for more than two decades, which renders the case distinguishable under *Thuraissigiam*.  Even beyond that distinction, though, *Velasco Lopez* arose out of a challenge to *detention during removal proceedings* under 8 U.S.C. § 1229a, which is fundamentally different from the issues Petitioner raises in this case.  *Velasco Lopez* also dealt with a different jurisdictional

---

[5] Petitioner overstates the import of the quotation from *Wong Wing* as it pertains to aliens' purported due process rights.  Notably, while the phrase Petitioner cites includes the words "any person" the sentence following the phrase Petitioner recites discusses "[a] resident, alien born." *Id.*  The sentence after that ties the term to where a person is "domiciled."  *Id.*  But, here, as noted in *Thuraissigiam*, Petitioner is not a resident at all.

predicate (8 U.S.C. § 1226) than this case, which is subject to the jurisdiction-stripping provisions of 8 U.S.C. § 1252.  Whatever theoretical value *Lora v. Shanahan*, 804 F.3d 601 (2d Cir. 2015), may have, ultimately the decision was vacated by the Supreme Court in light of *Jennings*. *Shanahan v. Lora*, 583 U.S. 1165 (2018).  The case became moot before any decision on remand. *Lora v. Shanahan*, 719 Fed. App'x 79 (2d Cir. 2018).  Neither case involved a challenge to an expedited removal proceeding.

Petitioner's arguments against applying *Thuraissigiam* flow from the flawed assumption that the court there determined 8 U.S.C. § 1225(b) set a constitutional floor.[6]  But all the court did there was state that, in the context of expedited removal, an alien is not entitled to due process, but rather only the process that Congress statutorily prescribes.  Petitioner now focuses on the fact that Congress provided, by default, that an alien subject to expedited removal would have a chance to raise an asylum claim.  8 U.S.C. § 1225(b)(1)(A)(ii).  But Petitioner does not meaningfully confront either 8 U.S.C. §§ 1182(f) or 1185, which are overarching Congressional limitations—to be imposed in the Executive's discretion—to the statutory provisions contained, among other places, in 8 U.S.C. § 1225(b).  Indeed, both 8 U.S.C. §§ 1182(f) and 1185 are iterations of the "long-established rule" that "the power over aliens is of a political character," which is, at best, "subject only to narrow judicial review."  *Fiallo v. Bell*, 430 U.S. 787, 792 (1977); *Kerry v. Din*, 576 U.S. 86, 106 (2015) (Kennedy, J., concurring in judgment) (noting the President has "broad power over the creation and administration of the immigration system").

---

[6] Indeed, while Petitioner's supplemental brief said, "[t]he Court noted its holding was limited to situations where Congress provided 'alternative procedures' satisfying constitutional requirements, explicitly stating: "we do not suggest that the current statutory scheme would be constitutional if it provided no procedural protections."  Dkt. # 15 at 16.  But Respondents cannot find this quotation in the decision.

In 8 U.S.C. § 1182(f), Congress gave the President the ability to suspend entry or impose restrictions on the "entry of aliens or of any class of aliens into the United States" if it "would be detrimental to the interests of the United States."  In 8 U.S.C. § 1185(a)(1), Congress made it "unlawful . . . for any alien to . . . enter or attempt to . . . enter the United States except under such reasonable rules, regulations, and orders, and subject to such limitation and exceptions as the President may prescribe."

Because Congress permissibly delegated the flexibility to address situations through "reasonable rules, regulations, and orders, and subject to such limitation and exceptions as the President may prescribe," there is no separation of powers issue with the President determining the availability of certain portions of the statutory process for expedited removal may need to be modified in the face of an emergency, as the President has proclaimed here.  Indeed, Proclamation 10888 notes Congress has given "the President . . . certain emergency tools."  The Proclamation further explains, "if the President has the power to deny entry of any alien into the United States, and to impose restrictions as he may deem appropriate, this authority necessarily includes the right to deny the physical entry of aliens into the United States and impose restrictions on access to portions of the immigration system."[7]  Indeed, the President's statutory authority to prohibit physical entry would be rendered ineffective (if not illusory) if that authority did not also permit the President to "take action against a covered alien who disregarded the prohibition and managed

_____

[7] Petitioner has not explicitly brought an Administrative Procedure Act claim here, but any such claim would fail.  First, the Administrative Procedure Act does not provide a cause of action for judicial review of a Presidential Proclamation because the President is not an agency. *See Franklin v. Massachusetts*, 505 U.S. 788, 801 (1992).  Second, federal courts cannot issue an injunction purporting to supervise the President's performance of his duties (and, certainly, as to his non-ministerial duties). *Mississippi v. Johnson*, 71 U.S. 475, 501 (1866).  Third, the Proclamation itself does not create a cause of action.

to set foot on U.S. soil." *See Huisha-Huisha v. Mayorkas*, 27 F.4th 718, 729 (D.C. Cir. 2022); *cf. Sale v. Haitian Centers Council, Inc.*, 509 U.S. 155, 187 (1993) (noting the President could impose a blockade to deny entry). As explained in Respondents' opposition brief, this is the same type of anomaly that Congress sought to avoid when it modified pre-existing procedures and created the removal and expedited removal procedures in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996.

Moreover, the President has inherent executive power over immigration as a part of his foreign affairs powers. Indeed, Proclamation 10888—quoting the Supreme Court's decision in *Shaughnessy*—explained, "[w]hen Congress prescribes a procedure concerning the admissibility of aliens, it is not dealing alone with a legislative power" but "[i]t is [also] implementing an inherent executive power."

2.    Petitioner's Equal Protection Claim Fails.

Petitioner also reiterates her purported equal protection claim, albeit obliquely, in terms of the statutory dividing line between an "alien [who] has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this subparagraph" and an alien who has not.[8] *Compare* 8 U.S.C. § 1225(b)(1)(A)(iii)(II) *with* Dkt. # 15 at 6. As explained in Respondents' opposition brief, Congress gave the Secretary of Homeland Security "sole and unreviewable authority" to designate aliens eligible for expedited removal under 8 U.S.C. § 1225(b)(1)(A)(iii)(II). *See* Dkt. # 12 at 12–13. The time period to challenge this congressional enactment has long passed. 8 U.S.C. § 1252(e)(3)(B).

---

[8] Petitioner has not cited a single case applying an equal protection challenge in a context similar to this one.

Petitioner is eligible for expedited removal because of the 2004 Notice. Dkt. # 12 at 12–13. The 2004 Notice applies to aliens physically present within the United States for 14 days or less and apprehended within 100 air miles of the land border. *See* Dkt. # 12 at 12–13. The 2025 Notice applies to aliens physically present in the United States for more than 14 days but up to two years.[9] Petitioner was in the United States for hours—at most—before her apprehension. *See* Dkt. # 12-1. Therefore, she is eligible for expedited removal by virtue of the 2004 Notice and, for that reason alone, any challenge to the 2025 Notice misses the mark. Dkt. # 12 at 12–13. But, to the extent she now challenges either notice, her purported equal protection claim is now time barred because she did not bring the action within "60 days after the date of the challenged section . . . is first implemented."[10]  8 U.S.C. § 1252(e)(3)(B).

### 3.    Petitioner's Facial Constitutional Challenge Fails.

Petitioner persists in pressing a facial constitutional challenge despite the jurisdictional bars contained in 8 U.S.C. § 1252. Petitioner still makes nothing more than vague claims—without meaningful explanation—as to how Petitioner's purported facial constitutional challenges differ from her individual claims. Such vagaries are not sufficient to articulate a challenge. In any event, any facial constitutional challenge fails for the same reasons her as-applied challenges fail. And a facial challenge would necessarily require a greater showing than an as-applied challenge, and as

---

[9] This Notice explicitly designates categories of aliens for expedited removal that were not previously designated. 90 Fed. Reg. 8139 (Jan. 24, 2025).

[10] Petitioner's claim fares no better reframed as a challenge to Congress's delegation of authority to designate certain aliens as subject to expedited removal proceedings. In 1996, Congress gave the Attorney General (and, now, by operation of law the Secretary of Homeland Security) the ability to subject certain aliens to expedited removal procedure embodied in 8 U.S.C. § 1225(b)(1)(A)(i).

explained above Petitioner has not made out an as-applied challenge here.[11]

The only case Petitioner cites in her supplemental brief, *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442 (2008), a First Amendment challenge to state election law that Petitioner purports pertains to the standard of review to be applied.  But that case related only to facial challenges under the First Amendment (and did not overrule or abrogate *United States v. Salerno*, 481 U.S. 739 (1987)), which has not been pled here.  Even so, that case counsels caution in the face of a facial challenge: "[f]acial challenges are disfavored for several reasons," including that "[c]laims of facial invalidity often rest on speculation[,] . . . [f]acial challenges also run contrary to the fundamental principle of judicial restraint[,] [and] facial challenges threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution."  *Id.* at 450–51.

---

[11] Petitioner states his facial constitutional challenge seeks "invalidation of the entire policy framework."  Dkt. # 15 at 18, 19.  Yet, even if he could state a facial constitutional challenge to a policy that concerns applicants for admission who lack any constitutional rights concerning their applications for admission, the Court could not enter any coercive relief that extends beyond relief to this named Petitioner.  8 U.S.C. § 1252(f)(1) states, "[r]egardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of part IV of this subchapter, . . . ."  *See Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022).  Notably, the Supreme Court has rejected any argument that § 1252(f)(1) only applies where the provisions are "*properly* interpreted."  *Id.* at 552.  Instead, the Court explained, "[w]e do not think that this is the most natural interpretation of the term 'operation,' since it is very common to refer to the 'unlawful' or 'improper' operation of whatever it is that is being operated."  *Garland*, 596 U.S. at 552.  Even as to individual injunctive relief, § 1252(f)(2) precludes individualized injunctive relief "unless the alien shows by clear and convincing evidence that the entry or execution of such order is prohibited as a matter of law."  Petitioner has fallen far short of meeting this heightened standard.

Petitioner cites *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471 (1999), which interpreted 8 U.S.C. § 1252(g). It is unclear how *Reno* fits into Petitioner's arguments, but the case does not help Petitioner. Petitioner claims, "the Court held that jurisdiction-stripping provisions don't bar constitutional challenges that 'raise questions about the framework itself.'" Dkt. # 15 at 6. But *Reno* did not so hold. Instead, *Reno* endorsed the jurisdictional limitations imposed by 8 U.S.C. § 1252(g) insofar as "[i]t prohibits federal courts from granting classwide injunctive relief against the operation of §§ 1221–1231," except as to "individual cases." *Reno*, 525 U.S. at 481–82. Indeed, the court specifically noted § 1252(g) precludes judicial review of "three discrete actions that the [Secretary of Homeland Security] may take: her 'decision or action' to 'commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Id.* at 482 (emphasis in original). So, too, *Trump v. Hawaii*, 585 U.S. 667 (2018), is not nearly as expansive as to create a per se rule allowing allegations of overreach to be "always subject to injunctive relief." Dkt. # 15 at 10. Notably, there—unlike here—the Government's argument centered on consular nonreviewability and did not "point to any provision of the INA that expressly strips the Court of jurisdiction over Petitioners' claims." *Trump*, 585 U.S. at 682.

### E.     *Petitioner's Irreparable Harm and Equities Arguments are Unavailing*

Petitioner's irreparable harm and equities arguments do not carry the day, either. As to Petitioner's irreparable harm argument, the United States refers back to its initial briefing. As to the equities, the United States notes delay in removing an alien who unlawfully entered the United States is itself an equity that should be balanced here. *Reno*, 525 U.S. at 490 ("Regarding, for example, the potential for delay: Whereas in criminal proceedings the consequence of delay is merely to postpone the criminal's receipt of his just deserts, in deportation proceedings the consequence is to permit and prolong a continuing violation of United States law."). To the extent

the Court is inclined to enter provisional relief here, Respondents would request the Court allow Petitioner to be relocated within the United States provided the Court and Petitioner's counsel are given 72 hours' notice of the intent to relocate Petitioner.

## II.   Petitioner Received a Convention Against Torture Assessment.

Petitioner received a Convention Against Torture assessment, which yielded a negative result (i.e. Petitioner did not establish that it is more likely not that that she will be tortured in the designated country of return or removal).  In issuing Proclamation 10888, the President found it would be "detrimental to the interests of the United States" to allow any alien who entered the United States on or after January 20, 2025, "who fail[ed], before entering the United States, to provide Federal officials with sufficient medical information and reliable criminal history and background information as to enable the fulfillment of the requirements of . . . 8 U.S.C. § 1182(a)(1)–(3)."  Therefore, the President invoked the authority Congress gave him under 8 U.S.C. § 1182(f) and 8 U.S.C. § 1185(a) to "direct that entry into the United States of such aliens be suspended" and to "restrict their access to provisions of the INA that would permit their continued presence in the United States, including . . . 8 U.S.C. 1158."  Consistent with Proclamation 10888, Petitioner did not receive a credible fear interview.

**CONCLUSION**

For these reasons, Respondents respectfully request that this Court enter an Order denying the relief sought in Petitioner's pending motion (Dkt. # 2, 4), dismissing the Petition (Dkt. # 1), and granting such further relief as this Court deems fair, just, and equitable.

Dated: June 20, 2025                    JOHN A. SARCONE III
                                        United States Attorney


                              By:    ___/s/David M. Katz___
                                     David M. Katz
                                     Assistant United States Attorney
                                     Bar Roll No. 700065