**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

GURPREET KAUR,

                                                  Petitioner,

v.                                                                          9:25-cv-726 (AMN)

CAPTAIN JOEL DESSO, et al.,

                                                  Defendants.
_____

**APPEARANCES:**                                         **OF COUNSEL:**

**LAW OFFICE OF DENNIS F. DESMARAIS**     **DENNIS DESMARAIS, ESQ.**
93 Mill Street, Suite 4
Springfield, MA 01108
_Attorneys for Petitioner_

**HON. JOHN A. SARCONE III**                      **DAVID M. KATZ, ESQ.**
United States Attorney for the                    Assistant United States Attorney
Northern District of New York
Office of the U.S. Attorney - Syracuse
P.O. Box 7198
100 South Clinton Street
Syracuse, New York 13261
_Attorneys for Respondents Reynaldo Castro,_
_Kristi Noem, and Pam Bondi_

**STAFFORD, PILLER LAW FIRM**               **JACQUELINE M. KELLEHER,**
P.O. Box 2947                                                    **ESQ.**
One Cumberland Avenue
Plattsburgh, NY 12901
_Attorneys for Respondent Captain Joel Desso_

**Hon. Anne M. Nardacci, United States District Judge:**

**ORDER**

**I.      INTRODUCTION**

Plaintiff's counsel Dennis Desmarais ("Mr. Desmarais") used artificial intelligence to draft a submission before this Court, and that submission contained fabricated quotations from cited legal authorities. *See* Dkt. No. 20.  On June 24, 2025, the Court ordered Mr. Desmarais to show cause as to why he should not be sanctioned pursuant to Fed. R. Civ. P. 11. *Id.*  Mr. Desmarais filed a response on June 27, 2025.  Dkt. No. 22.  For the reasons set forth below, the Court finds that sanctions are warranted.

**II.     BACKGROUND**

The Petitioner in this case, Gurpreet Kaur, was apprehended by immigration officials shortly after crossing the Canadian border.  On June 6, 2025, Mr. Desmarais, Petitioner's attorney, filed a petition for a writ of habeas corpus on her behalf.  Dkt. No. 1.  Mr. Desmarais also filed an emergency motion to stay Petitioner's removal.  Dkt. No. 2.  In both the petition and the emergency motion, Petitioner sought to prevent her deportation to India by challenging her detention, seeking mandamus relief to compel the Government to provide her with the process required by the relevant provisions of the Immigration and Nationality Act, and challenging the legality of Proclamation 10888, *Guaranteeing the States Protection Against Invasion*, to the extent that it contradicted her statutory rights.  *See* 90 Fed. Reg. 8333 (Jan. 29, 2025).  In light of Petitioner's potentially imminent removal, and to protect its ability to assess its own jurisdiction, the Court exercised its power under the All Writs Act to bar Petitioner's removal from the Northern District of New York on a temporary basis.  Dkt. No. 5 (citing 28 U.S.C. § 1651).  The Court also ordered a response by the Government.  *Id.*

The Government filed an initial response on June 13, 2025.  Dkt. No. 12.  The Court subsequently requested supplemental briefing on a variety of issues pertinent to its jurisdiction and the merits of Petitioner's claims.  Dkt. No. 13.  Mr. Desmarais filed a supplemental brief on behalf

of Petitioner on June 18, 2025.  Dkt. No. 15.  The Government filed a supplemental brief on June 20, 2025.  Dkt. No. 17.

Mr. Desmarais's supplemental brief, Dkt. No. 15, contains several fabricated quotations.  For example, in arguing that the Supreme Court's decision in *DHS v. Thuraissigiam*, 591 U.S. 103 (2020), did not bar Petitioner's suspension clause claim, Mr. Desmarais states that, "the Court noted its holding was limited to situations where Congress provided 'alternative procedures' satisfying constitutional requirements, explicitly stating: 'we do not suggest that the current statutory scheme would be constitutional if it provided no procedural protections.'"  Dkt. No. 15 at 16 (citing *Thuraissigiam*, 591 U.S. at 128).[1]  Despite Mr. Desmarais's representation that the Supreme Court "explicitly stat[ed]" the pertinent proposition, the quotation is nowhere to be found in the decision.  Additionally, in support of Petitioner's due process claim, Mr. Desmarais states the following: "In *Landon v. Plasencia*, the Supreme Court held that 'this Court has never held that an alien is entitled to no due process whatsoever,' establishing that constitutional requirements create a floor below which congressional limitations cannot go. 459 U.S. 21, 32 (1982)."  Dkt. No. 15 at 14.  Again, though *Landon v. Plasencia* is indeed a Supreme Court decision, the cited quotation does not exist.  459 U.S. 21 (1982).

The Government's supplemental brief notes these errors.  *See* Dkt. No. 17 at 19, 20 n.6.[2]  Mr. Desmarais failed to remedy, or even address, these errors at any point between the filing of

---

[1] Citations to court documents utilize the pagination generated by CM/ECF, the Court's electronic filing system.

[2] In its own review of Petitioner's supplemental brief, the Court identified additional false quotations.  Petitioner's supplemental brief states that "[i]n *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 482 (1999), the Court held that jurisdiction-stripping provisions don't bar constitutional challenges that 'raise questions about the framework itself.'"  Dkt. No. 15 at 6.  But the quoted language is nowhere to be found in *Reno*.  The brief also asserts that "Respondents' position would eliminate all constitutional protections for expedited removal cases, contradicting established precedent that 'the Constitution applies to undocumented

3

the Government's supplemental brief on June 20, 2025 and the subsequent June 24, 2025 hearing before this Court. During that hearing, the Court asked Mr. Desmarais to explain the presence of the fabricated quotations. Mr. Desmarais admitted that he used artificial intelligence to draft the brief. In response to Mr. Desmarais's admission, the undersigned ordered Mr. Desmarais to show cause as to why he should not be sanctioned. Dkt. No. 20.

In his response to the order to show cause, Mr. Desmarais explains that he used the generative AI tool Claude Sonnet 4 to "assist with research and drafting[.]" Dkt. No. 22 at 2. Mr. Desmarais asserts that he had not practiced in federal court for decades, and that just four days before he was required to submit Petitioner's supplemental brief, he visited an urgent care facility for a respiratory infection. *Id.* He explains that the respiratory infection caused him to lose "three days of work time approaching the final filing date[,]" and that he considered seeking an extension "but suspected this Court would look with disfavor on such a request" because it was Petitioner that had requested emergency relief. *Id.* Due to his health, Mr. Desmarais says he did not vet the brief after using generative AI, nor did he seek assistance from another attorney. *Id.* at 2-3. Mr. Desmarais admits that he "was aware at the time that AI tools are known to 'hallucinate' or fabricate legal citations and quotations[.]" *Id.* Finally, Mr. Desmarais emphasizes that he felt rushed to complete the brief "in view of the seemingly imminent deportation of his client." *Id.*

Upon filing his response to the Order to Show Cause, Mr. Desmarais sought to withdraw the offending filing, Dkt. No. 23. He has also represented to this Court that he notified his client's family of the issue, has "return[ed] to wholly traditional case by case personal examination of

---

immigrants' under *Wong Wing v. United States*, 163 U.S. 228 (1896)." Dkt. No. 15 at 6. But again, the quoted language does not exist in *Wong Wing*.

4

sources and phraseology[,]" and has enrolled in a CLE course specifically addressing the ethical use of AI in legal practice.  Dkt. No. 22 at 4-5.[3]

### III.   LEGAL STANDARD

The law provides that "[a] court may sanction counsel for signing pleadings whose legal theories are not 'warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.'" *Weiss v. David Benrimon Fine Art LLC*, 20-3842-cv, 2021 WL 6128437, *2 (2d Cir. Dec. 28, 2021) (summary order) (quoting Fed. R. Civ. P. 11(b)(2) and citing *id.* 11(c)).  "A court may, *sua sponte*, 'order an attorney ... to show cause why conduct specifically described in the order has not violated Rule 11(b).'" *United States ex rel. Hayes v. Allstate Ins. Co.*, 686 F. App'x 23, 27 (2d Cir. 2017) (summary order) (quoting Fed. R. Civ. P. 11(c)(3)).  "'If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction.'" *Id.* (quoting Fed. R. Civ. P. 11(c)(1)).  "A district court must make a finding of bad faith before issuing sanctions *sua sponte*." *Id.* (citing *Muhammad v. Walmart Stores E., L.P.*, 732 F.3d 104, 108 (2d Cir. 2013) (per curiam) (citing *In re Pennie & Edmonds LLP*, 323 F.3d 86, 91 (2d Cir. 2003))).  "In recent years, however, courts in this circuit have clarified that the subjective bad faith standard, as applied in the context of *sua sponte* Rule 11 sanctions, requires an attorney to have actual knowledge that a pleading or argument that he or she is advancing is frivolous." *Braun ex rel. Advanced Battery Techs., Inc. v. Zhiguo Fu*, No. 11cv04383 (CM)(DF), 2015 WL 4389893, at *14 (S.D.N.Y. July 10, 2015).

---

[3] Given the parties' stipulation of dismissal, the Court denies as moot Mr. Desmarais's motion to withdraw the offending filing.  *See* Dkt. No. 21.

## IV. DISCUSSION

### A. Violation of Rule 11

Here, there is no question that Mr. Desmarais violated Rule 11 of the Federal Rules of Civil Procedure. The Second Circuit has held that "[a]t the very least, the duties imposed by Rule 11 require that attorneys read, and thereby confirm the existence and validity of, the legal authorities on which they rely." *Park v. Kim*, 91 F.4th 610, 615 (2d Cir. 2024). Indeed, courts in this Circuit have not hesitated to find that the submission of fabricated legal authority resulting from the use of artificial intelligence is sanctionable conduct. *See id.*; *see also Benjamin v. Costco Wholesale Corp.*, --- F. Supp. 3d ---, 2025 WL 1195925, at *6 (E.D.N.Y. Apr. 24, 2025); *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 461 (S.D.N.Y. 2023).[4]

In his response to the order to show cause, Mr. Desmarais admits that he did not seek to confirm the existence or validity of the legal quotations in his supplemental brief. *See* Dkt. No. 22 at 1 ("Counsel respectfully and apologetically acknowledges that he used artificial intelligence software in drafting portions of a submission to this Court, and that said submission contained machine fabricated legal quotations."); *id.* at 3 ("counsel acted in this instance without safeguarding against such 'hallucinations' as he rushed to make the filing deadline"). Mr. Desmarais concedes that his conduct "constitutes a violation of Rule 11(b)(2) and (b)(3)." *Id.* at 1. Had Mr. Desmarais engaged in even a cursory inquiry into the cases cited in his supplemental brief, he would have discovered that several did not contain the pertinent language. *See* Fed. R. Civ. P. 11(b)(2).

---

[4] This Court finds no reason to distinguish between the submission of fabricated cases and the submission of fabricated quotations from real cases. In both postures, the attorney seeks to persuade the Court using legal authority that does not exist.

B.     **Subjective Bad Faith**

To impose sanctions *sua sponte*, this Court must find that Mr. Desmarais acted in bad faith because "[w]hen, as here, a court considers whether to impose sanctions sua sponte, it 'is akin to the court's inherent power of contempt,' and, 'like contempt, sua sponte sanctions in those circumstances should issue only upon a finding of subjective bad faith.'" *Mata*, 678 F. Supp. 3d at 462 (quoting *Muhammad*, 732 F.3d at 108). Generally, subjective bad faith requires a showing that the attorney "ha[s] *actual knowledge* that a pleading or argument that he or she is advancing is frivolous." *Brownell v. Starbucks Coffee Co.*, 5:22-CV-1199 (FJS/ATB), 2023 WL 9053058, at *3 (N.D.N.Y. Nov. 30, 2023) (emphasis in original) (quoting *Braun*, 2015 WL 4389893, at *14). Importantly, "conscious avoidance may be the equivalent of knowledge." *Mata*, 678 F. Supp. 3d at 463 (quotation omitted).

In responding to the order to show cause, Mr. Desmarais points to several factors which he argues explain, but do not justify, his decision to use artificial intelligence without checking for accuracy. *See supra* Section II (citing Dkt. No. 22 at 2-3). "But regret and apologies are not necessarily enough to avoid the imposition of sanctions for the submission of non-existent legal authority." *Benjamin*, 2025 WL 1195925, at *7 (citation omitted). The Court finds that Mr. Desmarais's conduct was taken in subjective bad faith, and therefore, is worthy of *sua sponte* sanctions. Mr. Desmarais was aware that artificial intelligence tools "are known to 'hallucinate' or fabricate legal citations and quotations." Dkt. No. 22 at 3.[5] Nevertheless, he made no attempt

---

[5] Even if Mr. Desmarais had not admitted to his knowledge of the tendency of artificial intelligence tools to "hallucinate" legal authority, courts have recognized that such knowledge is, at this point, generally known in the legal community. *See Wadsworth v. Walmart Inc.*, 348 F.R.D. 489, 498 (D. Wyo. 2025) ("attorneys have been on notice of generative AI's issues in hallucinating cases for quite some time"); *Pegnatori v. Pure Sports Techs. LLC*, No. 23-cv-01424, 2023 WL 6626159, at *5 n.5 (D.S.C. Oct. 11, 2023) ("thus far [generative AI's] batting average in legal briefs leaves something to be desired").

to check whether the assertions and quotations generated using artificial intelligence were accurate. *Id.* (acknowledging he failed to "safeguard[]" against hallucinations). Rather than simply reach out to the Government or this Court to seek a short extension, Mr. Desmarais knowingly resorted to a faulty tool and failed to check its work. Moreover, even after the Government noted the fabricated quotations in its supplemental brief, Mr. Desmarais failed to take any action whatsoever to remedy his submission prior to being confronted by this Court at the June 24, 2025 hearing. Either Mr. Desmarais had read the Government's brief and chosen to delay or avoid remedial action, or he had not read the Government's brief carefully enough to notice the allegations of fabrications. Either way, the Court finds that his conduct constitutes, at least, "conscious avoidance" of the presence of fabricated quotations in his supplemental brief, and therefore, satisfies the subjective bad faith standard. *Mata*, 678 F. Supp. 3d at 463. The Court's decision to impose sanctions *sua sponte* and its finding of bad faith align with the approach of the majority of courts in this Circuit. *See Benjamin*, 2025 WL 1195925, at *8; *Mata*, 678 F. Supp 3d at 464-65; *Park*, 91 F.4th at 615.

    **C.**    **Sanctions Imposed**

The Court turns to fashioning an appropriate sanction. "A sanction imposed under [Rule 11] must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives [and] an order to pay a penalty into court[.]" Fed. R. Civ. P. 11(c)(4). "The court has available a variety of possible sanctions to impose for violations, such as striking the offending paper; issuing an admonition, reprimand, or censure; requiring participation in seminars or other educational programs; ordering a fine payable to the court; referring the matter to disciplinary authorities . . ., etc." *Mata*, 678 F. Supp. 3d at 465 (citing Fed. R. Civ. P. 11, advisory committee's note to 1993 amendment).

As the Court explained in *Benjamin*, courts across the country have generally imposed financial sanctions on similarly situated attorneys in the range of $1,500 to $15,000. 2025 WL 1195925, at *6 (citing cases). Here, the Court finds a monetary sanction of $1,000 to be appropriate. Mr. Desmarais engaged in sanctionable conduct in the context of an emergency motion with an expedited timeline and, as he has represented to the Court, while suffering from a respiratory illness. Moreover, once confronted by the Court, Mr. Desmarais did not attempt to defend, or obfuscate, his sanctionable conduct. Instead, he immediately confessed to the use of artificial intelligence. Finally, Mr. Desmarais represents that he has voluntarily enrolled in a CLE course addressing the ethical use of AI in legal practice. Each of these factors weighs in favor of imposing a sanction below the typical range identified by the court in *Benjamin*. Indeed, in *Benjamin*, the court noted the attorney's apologetic posture and participation in remedial CLE courses as reason to impose a $1,000 sanction. *Id.* at *9. Such payment shall be made to the Clerk of Court within fourteen days of this Order as specified below.

As to non-monetary sanctions, where attorneys have not egregiously wasted the Court's resources by obfuscating and defending their use of fabricated legal authority, courts tend to impose relatively minor sanctions such as participation in a relevant CLE program and notice to the attorneys' clients. *See Benjamin*, 2025 WL 1195925, at *9 ($1,000 fine and requiring notification to client); *Gauthier v. Goodyear Tire & Rubber Co.*, No. 23-CV-281, 2024 WL 4882651, at *3 (E.D. Tex. Nov. 25, 2024) ($2,000 fine, CLE course, and notice to client); *Wadsworth*, 348 F.R.D. at 497-99 ($1,000-$3,000 fines and revocation of pro hac vice admission). After a review of the sanctions imposed by other courts, the Court orders that Mr. Desmarais must submit proof to this Court of his participation in a CLE-credited program related to the use of artificial intelligence in legal writing by September 1, 2025. The Court also requires that Mr.

9

Desmarais file proof that he has served Petitioner with a copy of this Order by the same date. The Court finds that no other sanctions are necessary to deter similar conduct.

V. **CONCLUSION**

Accordingly, the Court hereby

**ORDERS** that a penalty of $1,000 is imposed on Mr. Desmarais, and that payment shall be made within fourteen days of this Order to the Clerk of Court; and the Court further

**ORDERS** that Mr. Desmarais shall file proof of 1) completion a CLE-credited program related to the use of artificial intelligence in legal writing, and 2) service of this Order on Petitioner by September 1, 2025; and the Court further

**ORDERS** that the motion to strike, Dkt. No. 23, is **DENIED as moot**; and the Court further

**ORDERS** that the Clerk serve a copy of this Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: July 9, 2025
Albany, New York

Anne M. Nardacci
U.S. District Judge